UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NATHAN KUEHNERT,

Plaintiff,

-vs- Case No: 06-469 T

MIKHAELA LOUISE, INC.,

Defendant.

---

O'BRYAN BAUN COHEN KUEBLER
GARY Wm. BAUN (P28758)
Attorney for Plaintiff
401 S. Old Woodward, Suite 320
Birmingham, MI 48009
(248) 258-6262
(248) 258-6047 - fax
gbaun@obryanlaw.net

-and-

HANSON CURRAN
JAMES T. MURPHY (1698)
Local Counsel
146 Westminster St.
Providence, RI 02903
(401) 421-2154
(401) 521-7040
jtm@hcpw.com

---

**PLAINTIFF'S PRE-TRIAL CONFERENCE STATEMENT**

NOW COMES Plaintiff, NATHAN KUEHNERT, by and through counsel undersigned, O'BRYAN, BAUN, COHEN, AND KUEBLER, and pursuant to the provisions of the notice of this pre-trial conference provides his statement and claim.

**SYNOPSIS OF THE FACTUAL CLAIM**

This action is maritime personal injury in nature and arises from an incident which occurred on or about January 20, 2006 while Nathan Kuehnert was acting within the scope and course of his employment as a crewmember aboard the American Flag Fishing Vessel, F/V MIKHAELA LOUISE when he suffered severe and permanent disabling injuries. The F/V MIKHAELA LOUISE was owned and operated by Mikhaela Louise, Inc., a Rhode Island Corporation.

At all times material and relevant to issues herein, Nathan Kuehnert was employed as a member of the four (4) man crew the F/V MIKHAELA LOUISE as a commercial fisherman in the position of deckhand. The crew consisted of Jeremy Stefano, Captain, and Steven Holley, John Parker and Plaintiff Nathan Kuehnert as deckhand/fishermen. Pursuant to industry practice, Mr. Kuehnert was compensated through “lays” or a percentage of profits from sale of the vessel’s catch. Prior to the commencement of the voyage in question, Captain Stefano designed and fabricated a novel and untested appliance which he called an “S Hook” and intended to fit the vessel’s hauling gear.

Shortly after commencement of the voyage, Captain Stefano explained to Mr. Kuehnert and the crew that he had just created the “S Hook” device, and directed Mr. Kuehnert exactly how he wanted the device to be attached to the vessel’s portside hauling gear. After completing the task, Captain Stefano approved, and then directed Mr. Kuehnert to remove the device engaged while he was working on the starboard side rigging. Mr. Kuehnert attached a chain from the rigging gallows to the otter board, to relieve tension from the rigging in order to allow removal of the “S Hook”. Due to the configuration of the “S Hook” Mr. Kuehnert experienced difficulty in removing it from the rigging, and so informed Captain Stefano. Captain Stefano indicated that he would be working on

the starboard side gear and for Mr. Kuehnert to continue with removal of the "S Hook" from the portside gear. While Mr. Kuehnert was so engaged, the hydraulic winch and cable attached to the rigging was activated suddenly and without warning crushing Mr. Kuehnert's right thumb.

It is Plaintiff's contention that the subject incident and his resulting injuries and disability were caused by the negligence of Defendant and unseaworthiness of the F/V MIKHAELA LOUISE. It is Plaintiff's specific contention that the subject incident was caused by the negligence and incompetence of Captain Stefano when he inadvertently or carelessly activated the portside hydraulic winch without communication or warning, and through failure to adequately, appropriately, and competently inspect and maintain the portside hydraulic winch and attached equipment. Alternatively, Plaintiff claims that the subject incident occurred as a result of a defective control valve or control valve connection which caused unintentional activation of the hydraulic winch leading to the same result.

As a result of the subject incident, Mr. Kuehnert suffered a partial crush amputation of his right thumb and resulting permanent disability. Due to the nature and extent of injuries suffered by Mr. Kuehnert he has been permanently disabled from returning to the duties of his former occupation as a commercial fisherman and deckhand. Mr. Kuehnert presently remains under the care of his principal treating and evaluating medical provider Robert C. Marchand, M.D. who has additionally referred him to Vaughn G. Gooding, Jr., M.D. for a second opinion with respect to residual complications of the injury.

## ELEMENTS OF PLAINTIFF'S CLAIMS

In this action Nathan Kuehnert prosecutes several separate and distinct claims. First, Plaintiff prosecutes a claim pursuant to the Jones Act, 46 USC §30104 alleging negligence on the part of

Mikhaela Louise, Inc., his employer. Plaintiff prosecutes additional claims against Mikhaela Louise, Inc. as owner of the F/V MIKHAELA LOUISE under the General Admiralty Laws of the United States for failure to provide a seaworthy vessel, maintenance and cure.

For purposes of prosecution of Plaintiff's claims, it is undisputed that on January 20, 2006 and all other times material and relevant, he was employed by Mikhaela Louise, Inc. as a member of the crew of the F/V MIKHAELA LOUISE, a vessel in navigation.

## A. JONES ACT NEGLIGENCE

The Jones Act, 46 USC §30104 provides in pertinent part as follows:

> "(a) Cause of Action. A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee applied to an action under this section."

The pertinent section of the Federal Employee's Liability Act, Title 45 USC §52 provides in pertinent part as follows:

> "Every common carrier by railroad in their territories, the District of Columbia, the Panama Canal Zone, or other possession of the United States shall be liable in damages to any person suffering injury while he is employed by such carrier in any of said jurisdictions...for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason or any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

Although specific standards of care are not stated in the statute, certain employer duties have become integral parts of the FELA. These include: the duty to provide a reasonably safe place to work, Bailey v Central V. R.R., 319 US 350, 352-53, 63 S.Ct. 1062, 1063-64, 87 L.Ed. 1444 (1943);

the duty to provide reasonably safe tools and equipment, Baltimore & O.S. R.R. v Carroll, 280 US 491, 496, 50 S.Ct. 182, 183, 74 L.Ed. 566 (1930); and the duty to warn employees of unsafe working conditions, Terminal R.R. A'ssn. v Howell, 165 F2d 135, 139 (8th Cir. 1948).

A Jones Act claimant must establish negligence on the part of the employer, Cf. Ribitzki v Canmar Reading & Bates Limited Partnership, 111 F3d 658, 1997 AMC 1841 (9th Cir.1997) (quantum of evidence necessary to support finding of Jones Act negligence is less than that required for common law negligence) and Gautreaux v Scurlock Marine, Inc., 107 F3d 331, 1997 AMC 1521 (5th Cir. 1997) (standard of care is "ordinary prudence under the circumstances.") A Jones Act claimant may rely upon a relaxed standard of proximate cause between the wrongful act and the injury. This more lenient standard of "legal cause" allows recovery when the negligence contributed even in the slightest degree to the injury. Perkins v American Electric Power Fuel Supply, Inc., 246 F3d 593 (6th Cir. 2001). This is sometimes referred to as the "featherweight" standard. Comeaux v T. L. James & Co., 702 F2d 1023 (5th Cir. 1983).

In the instant case, it is one of Plaintiff's contentions that Captain Stefano negligently and incompetently failed to inspect or properly maintain the vessel's port hauling gear; and before ordering Plaintiff to attach and then detach the fitting of the hauling gear, failed to "lock-out or tag-out" the controls for the hauling gear hydraulic winch; and then inadvertently or negligently activated the winch and hauling gear without warning or communication to Plaintiff. Alternatively, it is Plaintiff's claim that the hydraulic control valve or connections for the winch were defective or incompetently and negligently maintained and inspected causing the winch to inadvertently, unintentionally, and suddenly activate.

**B. SAFE PLACE TO WORK**

The obligation of a vessel owner to his crew is substantially greater than that of an ordinary employer to his employees. It is the vessel owner's duty to provide the crew of a vessel with a reasonably safe place in which to work and the failure to do so gives rise to a cause of action under the Jones Act. Mahnich v Southern S.S. Co., 321 US 96, 88 L.Ed. 561, 64 S.Ct. 455 (1944); Spinks v Chevron Oil Co., 507 F2d 216 (5th Cir. 1975), clarified 546 F2d 675 (5th Cir. 1977). By comparison, the seaman's duty to protect himself (the grounds for any counter-vailing legal interests serving to exculpate the employer) is slight. His duty is to do the work assigned, not find the safest method of work. This is especially true when his supervisor knows of the working method used by the seaman, and does nothing about it. Spinks, *Id.* at 223-224.

The obligation of a shipowner to his seamen is substantially greater than that of an ordinary employer to his employees. Thus, under the Jones Act, an employer has the duty to provide a safe work place for its employees, and to prevail under the Jones Act, the Plaintiff must show that his or her employer breached this duty by failing to provide a safe work place through neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known. Churchwell v Bluegrass Marine, Inc., 444 F3d 898, 907 (6th Cir. 2006); Rannals v Diamond Jo Casino, 265 F3d 442 (6th Cir. 2001). Once a plaintiff establishes that the employer breached his or her duty of cure, however, the plaintiff need not establish proximate causation but only show that the Defendant's actions however slight, contributed in some way toward causing the plaintiff's injuries. Miller v American Presidents Lines, Ltd., 989 F2d 1450, 1463; Churchwell, *Id.* at 907.

The duty to provide a safe place to work includes a duty to provide reasonably safe tools and equipment and to promulgate and enforce safety rules, and evidence of failure to do so may be considered by the jury in assessing the employer's negligence. Ackley v Chicago & Northwestern

Transportation, 820 F2d 263, 266-267 (8th Cir. 1987); Ybarra v Burlington Northern, Inc., 689 F2d 147, 150 (8th Cir. 1982).

A vessel owner has a duty to select a competent master and crew and failure to exercise due care gives rise to liability under the Jones Act. Anderson v Great Lakes Dredge & Dock Co., 509 F2d 1119 (2nd Cir. 1974).

The duty to provide a reasonably safe place to work has been construed to require that an employer furnish safe and proper equipment so a seaman can perform his duties with reasonable safety, or in training him on the proper procedure if safer equipment was not available, if the employer knows or have a reason to know of unreasonable risk of harm. Fasold v Delaware River & Bay Authority, 2003 AMC 2379 (D. NJ 2003); Brogan v United N.Y. Sandy Hook Pilots Association, Inc., 213 F.Supp. 2d 432 (D. NJ 2002).

Negligence can be imposed for failure to provide and maintain reasonably safe equipment and appliances. Ceja v Mike Hooks, Inc., 690 F2d 1191 (5th Cir. 1982); Puamier v Barge BT 1793 395 F.Supp. 1019 (D. VA 1974). Likewise an employer can be found negligent for failure to provide adequate safety measures to guard against known risks of injury to its seamen. Perkins v American Electric Power Fuel Supply, Inc., 246 F3d 593 (5th Cir. 2001). In the instant case, Plaintiff claims alternatively that it is possible that his accident and injuries were caused by or failure of Defendant to properly maintain and inspect the vessel's equipment. Failure to make appropriate and competent equipment inspections can constitute negligence. Barger v Petroleum Helicopters, Inc., 514 F.Supp. 1199 (S.D. TX 1981).

**C. UNSEAWORTHINESS CLAIM**

The duty of a vessel owner to provide a seaworthy vessel includes maintaining equipment

in proper operating condition and is breached by transitory as well as permanent defects of equipment. Even temporary and unforseeable malfunction or failure of a piece of equipment under proper and expected use is sufficient to establish a claim for damages of unseaworthiness. Ferrara v A&V Fishing, Inc., 99 F3d 449, 452 (1st Cir. 1996); Havens v F/T Polar Mist, 996 F2d 215 (9th Cir. 1993); Lee v Pacific Far East Line, Inc., 566 F2d 65, 66 (9th Cir. 1970).

A vessel is unseaworthy if the vessel and its appurtenances are not "reasonably fit for their intended use." Mitchell v Trawler Racer, Inc., 262 US 539, 549, 80 S.Ct. 926 (1960). Where a ship's equipment malfunctions under normal use, a presumption arises that the equipment is defective and the vessel is unseaworthy under the Jones Act and General Maritime Law duty to provide a safe place to work. Havens v F/T Polar Mist, 996 F2d 215, 217, 218 (9th Cir. 1993); Villers Seafood Co., Inc. v Vest, 815 F2d 339, 342 (11th Cir. 1987). When a piece of equipment fails in the ordinary course of use resulting in injury, unseaworthiness exists as a matter of law, thus, entitling the seaman to either a directed verdict for unseaworthiness, Greene v Vantage Steamship Corp., 466 F2 159, 162 (4th Cir. 1972); a judgment of unseaworthiness as a matter of law overturning a contrary fact finding, Gibbs v Kiesel, 382 F2d 917, 919 (5th Cir. 1967), a jury instruction that the vessel was unseaworthy, King v Rockport Steamship Co., 30 FRD 349, 352 (W.D. MI 1962), new trial on unseaworthiness (if a directed verdict was not sought at trial), Sojak v Hudson Waterways Corp., 590 F2d 53, 54 (2nd Cir. 1978). Under the General Maritime Law, a shipowner is strictly liable for personal injuries caused by his or her vessel's unseaworthiness. Churchwell, *Id.* at 904.

Defective gear, or an unfit or understaffed crew can all render a vessel unseaworthy. Morales v City of Galveston, 370 US 165, 170, 82 S.Ct. 1226 (1962). Even the misuse of properly functioning equipment may render a vessel unseaworthy if the misuse occurs at the direction of a

superior. Waldren v Moore-McCormack Lines, Inc., 386 US 724, 726-28, 87 S.Ct. 1410 (1967).

To prevail on an unseaworthiness claim, a plaintiff must establish that a vessel's unseaworthy condition was the proximate cause of his or her injuries, Miller, *Id.* at 1463-64.

A vessel may be unseaworthy because it contains defective gear, is missing necessary gear, or because its crew is instructed to use unsafe work methods. Morales, *Id.* at 170; *See*, Waldren, 386 US at 727.

A shipowner may not limit his liability under the limitation act if his ship is unseaworthy due to faulty or defective equipment or incompetent crew which existed at the start of the voyage. He is charged with knowledge of the existence of that condition. Villers Seafood Co., Inc., *Id.* at 343; Hercules Carriers, Inc. v Claimant State of Florida Department of Transportation, 768 F2d 1558, 1563 (11th Cir. 1985); and In the Matter of the Complaint of Warrior & Gulf Navigation Company, 1997 AMC 1432, 1996 WL 904752 (S.D. Alabama 1996).

A corporate vessel owner may be deemed to have constructive knowledge of unseaworthiness or negligence if the unseaworthiness or negligence could have been discovered through exercise of reasonable diligence. Constructive knowledge exists if the vessel owner has a means of obtaining knowledge or if he would have obtained the knowledge by reasonable inspection; "knowledge" is not only what the vessel owner knows, but what he is charged with discovering. Brister v AWI, Inc., 946 F2d 350, 356, 358 (5th Cir. 1991); The Linseed King. Spencer Kellogg & Sons v Hicks, 285 U.S. 502, 512, 53 S.Ct. 450, 453 (1932); M. Verdin v C&B Boat Co., Inc., 860 F2d 150, 156 (5th Cir. 1988); In the Matter of the Complaint of Patton-Tully Transportation Company, 797 F2d 206, 211 (5th Cir. 1986); In the Matter of the Complaint of Hercules Carriers, Inc., 768 F2d 1558, 1563 (11th Cir. 1985); McNeil v Lehigh Valley Railroad Co., 387 F2d 623 (2nd Cir. 1967); China Union Lines,

Limited v A.O. Andersen & Co., 364 F2d 769, 787 (5th Cir. 1966); Avera v Florida Towing Corporation, 322 F2d 155, 166 (5th Cir. 1963); The Celeveco. The Admiral. Cleveland Tankers, Inc. v Szwed. Same, 154 F2d 605, 613 (6th Cir. 1946).

**D. APPLICATION OF OSHA REGULATIONS**

The F/V MIKHAELA LOUISE is an "uninspected" vessel. In Chao v Mallard Bay Drilling, Inc., 534 US 235 (2002), the Supreme Court held that OSHA Regulations apply to "uninspected" vessels operating in territorial waters. In Kernan v American Dredging Co., 355 US 426, 431 (1968), the Supreme Court held that under the Jones Act, violation of a safety statute or Coast Guard regulation that causes injury or death of an employee creates liability "in the absence of any showing of negligence". It is thus Plaintiff's contention that if defects in the vessel's equipment including hydraulic winch caused or contributed to Plaintiff's injury, and violated OSHA regulations, that violation would trigger 45 USC §53 imposing strict liability and negating comparative fault.

**E. CAUSATION**

Considerations of proximate cause are foreign to Jones Act litigation. Mayhew v Bell S.S. Co., 917 F2d 961, 963 (6th Cir. 1990); Hausrath v New York Central Railroad Co., 401 F2d 634 (6th Cir. 1968). Under the Jones Act, which incorporates the Federal Employers' Liability Act (45 USC 51, et seq) by reference, an employer is liable to any employee suffering injury resulting in whole or in part from the negligence of any officers, agents or other employees of the carrier. Liability will be impacted when it appears that the negligent act or omission played any part, no matter how small, in bringing about or actually causing the injury or damage. *Id.* at 637-638.

The requisite causation to sustain an unseaworthiness claim is less than the required for a common law negligence action. It is sufficient to sustain a jury's verdict if there was some evidence

that the unseaworthy condition was a direct and substantial cause of the injury. See Hubbard v Faros Fisheries, Inc., 626 F2d 196, 201 (1st Cir. 1980); Landry v Two R Drilling Co., 511 F2d 138, 142 (5th Cir. 1975); Peymann v Perini Corp., 507 F2d 1318, 1324 (1st Cir. 1974). Causation for unseaworthiness may be concurrent with the employee's negligence and that of fellow servants. See generally Mahnich, *Id.*, at 100; Joannessen v Gulf Trading and Transportation Co., 633 F2d 653, 657 n.5 (2nd Cir. 1980).

The burden of establishing legal causation under the Jones Act is minimal; the Court must simply inquire whether, with reason, a conclusion may be drawn that negligence of the employer played any part at all in the injury of the employee. Lies v Farrell Lines, Inc., 641 F2d 765, 771 (9th Cir. 1981); Brooker v Cleghorn, 907 F.Supp. 1406 (District of Hawaii 1994); Nelsen v Research Corp. of University of Hawaii, 805 F.Supp. 837, 848 (District of Hawaii 1992).

Jones Act negligence differs from that of ordinary common law negligence. Under the Jones Act, a plaintiff's burden for proving causation is considerably lower than what the common law requires. A plaintiff's burden of proving causation under the Jones Act is featherweight. Ferrara v A&V Fishing, Inc., 1996 W.L. 593505 (1st Cir. 1996); Toucet v Maritime Overseas Corp., 991 F2d 5 (1st Cir. 1993); Johnson v Offshore Express, Inc., 845 F2d 1347 (5th Cir. 1988).

In either case, the plaintiff's burden has been characterized as very light, even "featherweight." Vallot v Central Gulf Lines, Inc., 641 F2d 347, 350 (5th Cir. 1981).

Questions of negligence and causation in admiralty cases are treated as fact questions. Evidence of the slightest negligence is sufficient to sustain a finding of Jones Act liability. Further, the burden on plaintiff for showing causation in a Jones Act claim is also featherweight. Johnson, *Id.*, at 1352. Moreover, the fact finder is entitled to infer causation from unexplained events. Davis

v Odeco, Inc., 18 F3d 1237, 1242, 1243 (5th Cir. 1994). If the employer's negligent act or omission played a part, however slight, in bringing about the injury the employer is liable. Court's recognize that it does not matter that the evidence points to other causes for the injury. Lies, *Id.* ; Brooker, *Id.*, 907 F.Supp. 1406, at 1411; Nelsen, at 805 F.Supp. at 848-49.

Since there is no workman's compensation act for mariners or railroaders, the right of the jury to pass on questions of negligence and causation must be liberally construed. Joannessen v Gulf Trading & Transportation Co., 633 F2d 653, 656 (2nd Cir., 1980).

**F. COMPARATIVE NEGLIGENCE**

It is anticipated that Defendant will contend that Mr. Kuehnert was comparatively negligent on January 20, 2006 in the manner in which he was detaching the "S Hook" from the vessel's hauling gear. Defendant must prove its contentions relative to Plaintiff's alleged negligence and comparative negligence.

Immediately prior to trial in Hall v American Steamship Company, 688 F2d 1062 (6th Cir. 1982) that plaintiff moved *in limine* to strike the defendant's affirmative defense of contributory negligence. The motion was granted and the trial court affirmed on the grounds that what the defendant was asserting as a contributory negligence defense was in fact one of assumption of risk, which is precluded under the Jones Act. The Hall court reasoned as follows:

> In Tolar v. Kinsman Marine Transit Co., 618 F.2d 1193 (6th Cir. 1980), this court examined the distinction between assumption of risk and contributory negligence in the maritime setting. With regard to assumption of risk, the court noted that "[a' seaman may not be denied recovery because he proceeds in an unsafe area of the vessel, unless there was a safe alternative available to him." 618 F.2d at 1195. As for contributory negligence, the court held that "the defense of contributory negligence requires evidence of some negligent act or omission by the plaintiff other than his knowledgeable acceptance of

> a dangerous condition." Id. at 1196 (citing Rivera v. Farrell Lines, Inc., 474 F.2d 255, 257-58 (2d Cir.), cert. denied, 414 US 822, 94 S. Ct. 122, 38 L. Ed. 2d 55 (1973). Accord, Akermanis v. Sea-Land Service, Inc. 521 F. Supp. 44, 49 (S.D. N.Y. 1981). American Steamship did not and does not claim that Hall acted in any manner, aside from exposing himself to the conditions, that was negligent. Hence, even if Hall had the option to cease hosing down the deck if conditions became too rough, his performance of this task in a non-negligent manner could amount only to assumption of risk. Since American Steamship did not and does not contend that Hall was guilty of negligence in the manner in which he was washing down the deck, the district court did not err in striking the defense of contributory negligence. The issue as presented was one of law as to which the district court ruled correctly." Id., at 1065-1066.

In Rivera, (cited in Hall), the plaintiff slipped and fell in a wet pantry sustaining injury to his back. The court charged the jury that if it accepted the defendant's contentions, "the plaintiff was guilty of carelessness in persisting in moving in and out of this pantry without more caution as to where he walked and how he walked and how he handled himself." Rivera at 474 F.2d 257. The Second Circuit held that the claimed contributory negligence was really assumption of risk and that the lower court erred in charging the jury on it.

In Joyce v Atlantic Richfield Company, 651 F.2d 676 (10th Cir. 1981), the seaman slipped on a messy and slippery deck causing injury. The defendant claimed that the plaintiff "failed to use ordinary care under the existing circumstances for his own safety and...[failed] to keep a watch on the conditions surrounding him and his work, by failing to notice danger which was obvious or would have been obvious to any reasonably prudent person exercising ordinary care under the existing circumstances". *Id*. at 683.

The court held that although the instructions were framed in contributory negligence terms, that they impermissibly injected the doctrine of assumption of risk. The case was reversed and

remanded because of it.

As pointed out in Tolar v Kinsman Marine Transit Company, 618 F2d 1193, 1196 (6th Cir. 1980), contributory negligence "requires evidence of some negligent act or omission by the plaintiff other than his knowledgeable acceptance of a dangerous condition".

**G. MAINTENANCE AND CURE CLAIM**

A plaintiff bringing a claim for maintenance and cure pursuant to the General Maritime Law requires the operator of a vessel to provide maintenance and cure to a seaman who becomes ill or is injured while in the service of the vessel and arises from the context of the employment relationship and not from any negligence or fault on the part of the vessel. Calmarss Corp. V Taylor, 303 US 525 1938 AMC 341 (1938). The presumption is in favor of entitlement to maintenance and cure on the part of the seaman. Vaughan v Atkinson, 369 US 527, 1962 AMC 1131 (1962).

The seaman has the burden of proving that his or her disability occurred, was aggravated or manifested itself while in the service of the vessel. Miller v Lykes Bros.-Ripley S.S. Co., 98 F2d 185, 1938 AMC 1228 (5th Cir. 1938). The employer has the affirmative duty to promptly investigate the claim for maintenance and cure and resolve doubts as to entitlement in favor of the seaman and promptly pay the amounts due. Vaughan, *supra*. "Maximum cure" will terminate the obligation to pay maintenance cure and unearned wages. Maximum cure is reached when the seaman's condition will not further improve with additional medical treatment. Vella v Ford Motor Co., 421 US 1, 1975 AMC 563 (1975).

The seaman's burden of production of proof in establishing the value of his maintenance is "feather light." Yelverton v Mobile Laboratories, Inc., 782 F2d 555 (5th Cir. 1986). The amount of maintenance to be paid is a question of fact to be determined at trial from the evidence presented.

United States v Robinson, 170 F2d 578 (5th Cir. 1948). Maintenance consists of the actual reasonable expenses of obtaining room and board ashore, equivalent to the quality received aboard the vessel. McWilliams v Texico, Inc., 781 F2d 514, 1986 AMC 2471 (5th Cir. 1986). "Cure" is defined as the reasonable medical expenses for treatment until the seaman is fit for duty or until maximum cure is reached. A seaman who falls ill or becomes injured while in the service of the ship is entitled to maintenance, cure and unearned wages from his employer to the end of the voyage for which he was employed. Lipscomb v Foss Maritime Co., 83 F3d 1106, 1996 AMC 1958 (9th Cir. 1996).

Respectfully submitted,

O'BRYAN BAUN COHEN KUEBLER

/s Gary Wm. Baun
Gary Wm. Baun (P28758)
Attorneys for Plaintiff
401 S. Old Woodward, Suite 320
Birmingham, MI 48009
Telephone: (248) 258-6262
Facsimile: (248) 258-6047
gbaun@obryanlaw.net

-and-

HANSON AND CURRAN

s/ James T. Murphy (w/ consent)
JAMES T. MURPHY (1698)
Local Counsel
146 Westminster St.
Providence, RI 02903
Telephone: (401) 421-2154
Facsimile: (401) 521-7040
jtm@hcpw.com

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on the 17th day of April, 2007, the foregoing was filed using the Court's ECF filing system and will be served using the Court's ECF system.

J. Renn Olenn
Martin K. DeMagistris
Olenn & Penza, LLP
530 Greenwich Avenue
Warwick, RI 02886

James T. Murphy
Hanson Curran
146 Westminster Street
Providence, RI 02903

/s/ Gary Wm. Baun